United States Bankruptcy Court
Southern District of Texas
**ENTERED**
March 02, 2026
Nathan Ochsner, Clerk

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 25-33359 |
| ISEN IMERI, *et al.*, | § | |
| | § | CHAPTER 7 |
| Debtors. | § | |
| | § | |
| CUSTOMERS BANK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 25-3648 |
| | § | |
| ISEN IMERI, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER DENYING MOTION FOR ENTRY OF DEFAULT

### BACKGROUND

According to Customers Bank, on or about October 15, 2018, Imeri Enterprises Inc. and Customers Bank executed a Note, Deed of Trust, and Security Agreement (hereinafter the "Loan Documents") whereby Customers Bank agreed to advance approximately $4 million to Imeri Enterprises in exchange for a blanket security interest and lien on the hotel and vacant lot located at 28332 Southwest Freeway 59, Rosenberg Texas 77471 (hereinafter the "Property").[1] According to Customers Bank, in connection with the execution of the Loan Documents, Defendants Isen and Sadete Imeri (together the "Defendants"), along with their son Arben Imeri, executed an Unconditional Guarantee whereby the Imeris each guaranteed payment

---

[1] ECF No. 1, at 2–3.

of all sums and satisfaction of all obligations due under the loan to Imeri Enterprises.[2]

According to Customers Bank, Imeri Enterprises and the Defendants failed to timely make the payment on the Note scheduled for July 1, 2023, and all payments when due thereafter.[3] Due to the default, Customers Bank accelerated maturity of the loan and the Imeris became unconditionally liable to Customers Bank for full payment and performance of all obligations arising under the Loan Documents.[4] According to Customers Bank, the Defendants failed or refused to remit payment as required by the terms of the Loan Documents.[5]

After the Imeris tried without success to sell the Property, Customers Bank initiated Case No. 24-DCV-312345 in the 400th Judicial District Court, Fort Bend County, Texas.[6] On April 22, 2024, due to the Imeris' failure to sell the Property, the Texas State Court entered the Agreed Order Appointing a Receiver (hereinafter the "Agreed Order"), whereby a court-appointed Receiver was granted the specific powers to manage, operate, preserve, maintain, protect, and administer the Property.[7] Also pursuant to the Agreed Order, the Imeris were required to turn over all records for any and all bank accounts associated with Imeri Enterprises and were prohibited from exercising control over any income and profits of the Property.[8] Imeri Enterprises agreed to grant the Receiver complete and exclusive control of any and all of its bank accounts and payment rights relating to ownership, operation, or management of the Property.[9] Imeri Enterprises also agreed that any employee or individuals who held any interest in the Property were prohibited from exercising control in any

---

[2] *Id.* at 3.
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.* at 4.
[7] *Id.*
[8] *Id.*
[9] *Id.*

manner over any of the Property except as the Receiver may specifically direct.[10]

On May 6, 2024, Imeri Enterprises filed for Chapter 11 bankruptcy in this Court.[11]  On March 21, 2025, the Court held a contested hearing on confirmation of Imeri Enterprises' plan and the Trustee's motion to convert or dismiss.  On March 24, 2025, the Court denied confirmation and dismissed the bankruptcy case, thereby removing the automatic stay.[12]

On June 12, 2025, Defendants (the individuals) filed Chapter 7 bankruptcy for themselves in this Court.[13]

On September 4, 2025, Customers Bank filed this adversary proceeding in Defendants' individual bankruptcy case, alleging that soon after dismissal of Imeri Enterprises' Chapter 11 bankruptcy, Defendants caused various transfers of funds from Imeri Enterprises' operating account, control of which allegedly was supposed to have shifted to the Receiver after dismissal of the case.[14]  Customers Bank further alleges that Defendants engaged in efforts to thwart the Receiver and enable themselves to improperly withdraw funds subject to the Agreed Order.[15]

In its adversary complaint, Customers Bank sought (i) declaratory judgment that certain obligations of the Defendants under the Loan Documents are non-dischargeable and that Defendants are not entitled retain certain funds they allegedly hold as a result of improper transfers out of Imeri Enterprises' operating account, and (ii) to compel the turnover of such funds.[16]

---

[10] *Id.*
[11] Case No. 24-32106, ECF No. 1.
[12] Case No. 24-32106, ECF No. 283.
[13] Case No. 24-33359, ECF No. 1.
[14] ECF No. 1.
[15] *Id.* at 6.
[16] *Id.* at 1.

On September 5, 2025, the Summons and Complaint were served on Defendants as well as Defendants' counsel.[17]

The time for filing an answer or other response was October 5, 2025. That deadline came and went with no answer or response having been submitted by Defendants.[18]

On October 16, 2025, Customers Bank filed the instant Motion for Entry of Default (hereinafter the "Motion").[19] In the Motion, Customers Bank alleged that Defendants' counsel had contacted Customers Bank's counsel seeking a ten day extension, but thereafter remained unresponsive to counsel's attempts to conference regarding the same.[20]

On October 23, 2025, Defendant filed an Answer that addressed certain allegations in the adversary Complaint but did not contain any affirmative defenses.[21] On the same day, Defendants filed a Response to the Motion, arguing it should be denied as moot because Defendants had since answered the adversary Complaint.[22]

On December 17, 2025, Defendants filed a brief in support of denial of the Motion, reiterating its position that the Motion should be denied as moot, and further arguing that Fifth Circuit policy disfavors the entry of default judgments.[23]

On December 30, 2025, Customers Bank filed a Reply, arguing that good cause exists to justify entry of default under FED. R. CIV. P. 55(c).[24]

On January 21, 2026, the Court heard argument on the Motion and took the matter under advisement.[25]

---

[17] ECF No. 3; ECF No. 4; ECF No. 5.
[18] ECF No. 9, at 2.
[19] *Id.* at 1.
[20] *Id.* at 2.
[21] ECF No. 10.
[22] ECF No. 11.
[23] ECF No. 19.
[24] ECF No. 20.
[25] ECF No. 22.

## JURISDICTION

28 U.S.C. § 1334(a) provides the District Courts with jurisdiction over this proceeding. 28 U.S.C. § 157(b)(1) states that "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." This proceeding has been referred to this Court under General Order 2012-6 (May 24, 2012). The Motion for Entry of Default is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and is related to Case No. 25-33359. And venue is proper under 28 U.S.C. §§ 1408 and 1409.

## LEGAL STANDARD

Even though a default judgment has not yet been entered, in determining whether to grant a motion for entry of default the Court applies the "good cause" standard under FED. R. CIV. P. 55(c), made applicable to this adversary proceeding through FED. R. BANKR. P. 7055. *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000). In determining whether good cause exists, courts in the Fifth Circuit consider three factors: (1) whether the default was willful; (2) whether denial of the motion would prejudice the adversary proceeding; and (3) whether a meritorious defense has been presented. *Id.*

## DISCUSSION

With respect to the first factor, willfulness, Customers Bank claims that there was evidence of willfulness because Defendants' counsel reached out for an extension, did not follow up, and went radio silent even after Customers Bank's counsel sent a reminder email a week after Defendants' counsel had initially reached out. The Court, however, disagrees that Defendants' and Defendants' counsel's conduct was willful within the meaning of Rule 55(c).

According to the Fifth Circuit, willfulness within the meaning of Rule 55(c) is defined as "an intentional failure to respond to litigation." *In re OCA*, 551 F.3d 359, 370 n.32 (5th Cir. 2008). Defendants' counsel testified at trial that his failure to make a timely appearance was due to

an unspecified "scheduling error." Counsel testified he had an issue getting in contact with his client during the relevant time period and was unable to figure out how the client wished to proceed. Counsel testified that he and his clients' failure to respond to Customers Bank's counsel was not the product of willfulness, but rather their own neglect. Counsel also testified that it was not at all intentional that he or his client failed to make an appearance in this case before the time period lapsed to file an answer or to otherwise make a formal appearance in this case.

Both counsel and Mr. Imeri testified that they took this lawsuit seriously, and Mr. Imeri testified that he was not seeking to avoid this lawsuit by failing to respond to his counsel or make an appearance with the Court. In the Court's view, this is not necessarily the type of situation where Defendants or their counsel are trying to "play games with this [C]ourt." *See Lacy*, 227 F.3d at 292–93 (citing *In re Dierschke*, 975 F.2d 181, 183 (5th Cir. 1992)). This might change if the record continues to demonstrate Defendants' failure to timely adhere to filing deadlines.

Nonetheless, at this juncture the Court finds Mr. Imeri's and his counsel's testimony credible. The Court does not find that Defendants' and their counsel's failure to respond was willful by a preponderance of the evidence under Rule 55(c), but rather a function of their negligence arising out of a purported scheduling error and miscommunication between client and counsel.[26] *See In re OCA, Inc.*, 551 F.3d at 372 ("[T]rial courts must apply [] the preponderance-of-the-evidence standard when assessing willfulness" which necessarily requires making credibility determinations based on testimony at trial). Therefore, the willfulness factor weighs against granting the Motion.

With respect to the second element, whether denial of the Motion would prejudice the adversary proceeding, Defendants argued that

---

[26] The Court is careful to note, however, that "excusable neglect" is not the standard for ruling on a motion for default. *In re Dierschke*, 975 F.2d at 183, n. 3. Rather, the Court takes into account the purported negligence of Defendants and their counsel when evaluating whether that conduct rises to the level of willfulness within the meaning of standard for Rule 55(c).

there would be no prejudice to Customers Bank upon a denial of the Motion, nor prejudice to this adversary proceeding in general. To demonstrate prejudice, "there must be a showing that the delay will result in 'the loss of evidence, increased difficulties in discovery, or greater opportunities for fraud or collusion.'" *Lacy*, 227 F.3d at 293 (citation omitted). The Court agrees with the Defendants that there would be little to no prejudice upon a denial of the Motion. This is especially true in light of the fact that Defendants have now filed their Answer and have represented via testimony that Defendants and their counsel take this lawsuit seriously.

While neither party necessarily presented evidence with respect to whether a denial of the Motion might risk increased opportunities for fraud or collusion, the Court is somewhat concerned by the nature of Customers Bank's allegations in the adversary complaint with respect to the Defendants' alleged fund transfer and the alleged disregard of the terms of the Receivership. The merits of Customers Bank's non-dischargeability claim, however, are not before the Court today, and there has been no direct evidence introduced to indicate that further potential misconduct would arise upon a denial of the Motion.

Complying with deadlines represents a crucial component to the fair and efficient administration of this adversary proceeding and this Court's docket in general. However, "[m]ere delay 'does not alone constitute prejudice.'" *Id.* The Court is not convinced that permitting this lawsuit to continue would substantially endanger its ability to administer this case or interfere with its docket, nor that Defendants would continue to miss filing deadlines they are required to comply with under the Federal Rules of Civil Procedure and the Bankruptcy Rules.

With respect to the third element, whether a meritorious defense may have existed, it is true no affirmative defenses were plead in the Defendants' late-filed Answer. "When analyzing this factor, the '[l]ikelihood of success is not the measure,' rather a defendant's allegations are considered to be meritorious 'if they contain even a hint of a suggestion which, proven at trial, would constitute a complete defense.'" *Koerner v. Vigilant Ins. Co.*, Case No. 16-13319 2017 WL 1927742, at *2 (E.D. La. May 10, 2017) (quoting *Side by Side*

*Redevelopment, Inc. v. City of New Orleans*, Case No. 09-03861, 2010 WL 375237, at *3 (E.D. La. Jan. 25, 2010)).

Based on the record and testimony at trial, the Court is not convinced the meritorious defense prong weighs in favor of granting the Motion. At trial, Mr. Imeri testified that the Receiver did not show up until a month after Imeri Enterprises' bankruptcy case was dismissed and that he was still in charge of managing the Property during this time period. Mr. Imeri testified that no one notified him that the Receiver was going to do anything with respect to the Property after the dismissal of Imeri Enterprises' bankruptcy case.

Mr. Imeri also testified that during the time period in which the Receiver was absent, he took steps to preserve the Property as best he could and keep the hotel operational until the Receiver showed up, including submitting money to pay employees, spending money to pay for operations at the hotel, and spending money on bills Defendants were responsible for. The funds used for these payments may have been the same funds Customers Bank alleges were improperly withdrawn from Imeri Enterprises' operating account immediately after dismissal of the Chapter 11 bankruptcy case.

Mr. Imeri testified that at the time of making these payments, he did not believed he owed back that money to Customers Bank and rejected the characterization that he knew these payments would have been blocked by the Receivership. Instead, Mr. Imeri testified that he believed the Receiver would never come.

In the Court's view, Mr. Imeri's testimony indicates a "hint of a suggestion" that he may have a complete defense to the dischargeability dispute. *Id.* The Court's ruling today does not make any finding with respect to whether Defendants' defense is meritorious as a matter of law. That issue is not before the Court on this Motion. Rather, based on Mr. Imeri's testimony, as well as the testimony of Defendants' counsel, the Court believes Defendants have met their burden of proof with respect to demonstrating good cause does not exist to grant the Motion. In conjunction with the Fifth Circuit's policy disfavoring the entry of default judgments, the Court will deny Customers Bank's Motion for

Entry of Default against Defendants. *Mason & Hanger v. Metal Trades Council of Amarillo*, 726 F.2d 166, 168 (5th Cir. 1984).

## CONCLUSION

For the foregoing reasons, it is hereby,

ORDERED that the Motion for Entry of Default is DENIED.

Signed: March 02, 2026

_____
Alfredo R Pérez
United States Bankruptcy Judge